**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| BENEPLACE, INC., | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| PITNEY  BOWES,  INC.,  MERCER | § | A-15-CV-065-LY-ML |
| CONSULTING  GROUP,  INC.,  MERCER | § | |
| (US) INC.; and MERCER HEALTH AND | § | |
| BENEFITS ADMINISTRATION, LLC, | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**ORDER**

Before the Court are Defendant Pitney Bowes Inc. ("Pitney Bowes")'s Motion to Compel Plaintiff's Production of Documents and Responses to Interrogatories [Dkt. #38] (the "Pitney Bowes Motion to Compel"), Plaintiff Beneplace, Inc. ("Beneplace")'s Responses in Opposition to Pitney Bowes's Motion to Compel [Dkt. #40] (the "Response to Pitney Bowes"), and Defendant Pitney Bowes' Reply to Plaintiff's Response in Opposition to Motion to Compel [Dkt. #41] (the "Pitney Bowes Reply").  Also pending before the Court are Defendant Mercer Health & Benefits Administration LLC ("Mercer")'s Motion to Compel Production of Documents [Dkt. #42] (the "Mercer Motion to Compel"), Beneplace's Responses in Opposition to Mercer's Motion to Compel [Dkt. #47] (the "Response to Mercer"), and Defendant Mercer's Reply In Support of Its Motion to Compel Production [Dkt. #48] (the "Mercer Reply").  These Motions to Compel and responsive briefing have been referred to the undersigned by United States District Judge, Lee Yeakel, for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court

1

for the Western District of Texas.  After reviewing the pending motions, the relevant case law, as

well as the entire case file, the undersigned issues the following Opinion and Order.

## I.   BACKGROUND

This lawsuit concerns whether a Master Services Agreement (MSA) between Plaintiff,

Beneplace, Inc. ("Beneplace") and Defendant, Pitney Bowes, Inc. ("Pitney Bowes") imposes a

duty on Pitney Bowes to take steps to preserve Beneplace's right to ongoing receipt of

commissions generated during the term of the MSA.  The clause at issue is reprinted in full:

> Beneplace and the Client anticipate that Beneplace will expend
> substantial time and capital in the implementation of the Offering
> Package and the delivery of the services described above.  Because
> such time and capital is likely to be expended by Beneplace before
> it receives a reasonable return on its investment (through receiving
> fees and/or commissions from the Providers on the sale of
> programs, products, and services to the employees), the Client
> agrees that, while the Client has the right to terminate this
> Agreement at any time with ninety (90) days notice, the
> commissions generated during the term of this Agreement will
> remain as the property of Beneplace and cannot be assigned to a
> new insurance agent/broker/service provider.  In the event that the
> Client terminates this Agreement with Beneplace but continues to
> make the insurance benefits and other services and products that
> are part of the Offering Package available to the employees, the
> new insurance agent/broker will only be eligible for commissions
> from the sales of product from the date of the contract forward and
> no commissions from the Beneplace engagement will carry
> forward.  These commissions will continue to be the property of
> Beneplace so long as any individual is continually insured by the
> provider of goods and services originally managed by Beneplace.
>
> Resp. to Pitney Bowes [Dkt. #40] Ex. A, MSA §2.4.

Not surprisingly, the parties disagree on the effect of this language.  Defendants assert the clause

merely recites Beneplace's understanding with the third party Providers who make up the

Offering Package.  According to Defendants, Pitney Bowes is not a party to the commission

agreements and other contractual arrangements between Beneplace and the third party Providers. Therefore, Pitney Bowes can have no obligation with respect to the assignment of commissions from those Providers, and Pitney Bowes' new relationship with Mercer is not an improper interference with any agreements between the Providers and Beneplace. Beneplace, on the other hand, contends the clause imposes a duty on Pitney Bowes to "protect" Beneplace's existing commissions by not assigning any existing right to collect commissions to a new broker and by informing the relevant parties that any new broker is only eligible to collect commissions from new sales, not from renewals of existing contracts. Beneplace contends Mercer induced Pitney Bowes to ignore this duty in breach of Pitney Bowes' post-termination contractual obligations.

All parties contend that, to the extent their reading of Section 2.4 is not supported by its plain language, the contract should be considered ambiguous and extrinsic evidence should be admissible to determine the meaning of the relevant provision. To that end, Pitney Bowes has propounded discovery it describes as "relating to (1) Beneplace's previous enforcement of contracts that contain provisions which are identical to the one at issue in this case and (2) documents relating to Beneplace's damages from the alleged breach of contract." Pitney Bowes Mot. Compel at 2. Mercer's discovery requests run along the same lines, but are narrower in scope in that they are limited to "the insurance policies at issue," identified by Beneplace as the source of its alleged damages. Mercer Reply at 1-2. Mercer seeks communications and broker agreements between Beneplace and MetLife and Liberty Mutual,[1] as well as documents identifying commissions on the insurance policies at issue, and "documents supporting Beneplace's claims for damages." Mercer Reply at 1-2.

---

[1] The parties informed the Court at the hearing that Beneplace produced the broker agreements (but not any related communications) after the Motions to Compel were filed.

Both Defendants seek their attorneys' fees and costs for bringing the Motions to Compel. In evaluating the Motions to Compel, the court is mindful Defendants have attempted to reach agreement (and have in fact obtained agreement) from Beneplace regarding the scope of many of these requests, but Beneplace refused to actually produce documents subject to the parties' agreement until after the Motions to Compel were filed.   At the hearing, the Court found Beneplace is continuing to withhold additional responsive documents.

## I.   APPLICABLE LAW

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer an interrogatory under Federal Rule of Civil Procedure 33.  *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  FED. R. CIV. P. 37(a)(4).  The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

The scope of permissible discovery is governed by Federal Rule of Civil Procedure 26, which was amended, effective December 1, 2015.  The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending.  As amended, Rule 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

4

and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Though this suit was filed January 26, 2015, before the amendments to Rule 26 went into effect,  the Court finds applying the scope of discovery set out in Rule 26(b)(1) as amended to the current dispute is both just and practical.  In particular, the Court finds "the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above." *McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co*., No. 3:14-cv-2498-B, 2016 U.S. Dist. LEXIS 1999, *11-12 (N.D. Tex. Jan. 8, 2016).  Federal courts have always had the obligation to balance proposed discovery against the needs of the case and the burden or expense of the proposed discovery.  *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). The amendments to Rule 26 merely highlight this duty.  *McKinney*, 2016 U.S. Dist. LEXIS 1999 at *11-12.

## II.  PITNEY BOWES' MOTION TO COMPEL [DKT. #38]

### A.  Information Relating to Use and Enforcement of Section 2.4 in Other Contractual Relationships

Pitney Bowes' discovery requests for information relating to prior enforcement of Section 2.4's language are reprinted here with Beneplace's objections.  The Magistrate Court's analysis and order regarding the objections and scope of production follows immediately after each discovery request and response pair.

5

**INTERROGATORY NO. 12:**  Identify all agreements that You have with any other Beneplace client which contain language identical to Section 2.4 of the MSA, that have been terminated, and state whether You are continuing to receive commissions under those contracts, and if not, why not.

**SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this interrogatory as harassing, overbroad, and unduly burdensome, to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  A list of other clients with whom Beneplace has contracts with language identical to Section 2.4 of the Master Services Agreement has nothing to do with the three issues in this case:  (i) the legal obligations imposed by Section 2.4 of the Master Services Agreement, (ii) whether Pitney Bowes breached those legal obligations, and (iii) whether the Mercer Defendants tortiously interfered with Pitney Bowes' legal obligations.

Beneplace further specifically objects to this interrogatory to the extent it seeks trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

**RESPONSE:**  Subject to its general and specific objections, Beneplace responds as follows:

Each written contract between Beneplace and one of its clients (of which there are approximately 300) contains a provision with language identical to Section 2.4 of the Master Services Agreement.  Beneplace has never had a client or the client's new insurance agent/broker/service provider dispute the validity or enforceability of any of those provisions.

Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections as to harassment, relevance, burden, and protection of trade secrets are OVERRULED.  The questions are not harassing or irrelevant, as counsel for Pitney Bowes was able to articulate a legitimate purpose for them at the hearing—to identify "identical" contract clauses that were terminated, and to see whether Beneplace has routinely, rarely, or never been able to enforce the same rights to tail commissions it claims in this case.  Beneplace has not articulated any significant burden from identifying the tail commission status of 300

contracts it has clearly already identified and investigated to some degree.  Beneplace's concerns about trade secrets and confidential information are addressed by the agreed Protective Order in this case.  Finally, Beneplace's heavily-qualified discovery response, that no client or new broker has disputed the validity of the tail commission provision, is at least partially nonresponsive. The question as written seeks to identify whether Beneplace has ***actually collected*** tail commissions after termination of an MSA.

At the hearing, counsel identified at least one commission producing business from the Pitney Bowes MSA, from whom Beneplace had elected not to pursue tail commissions for business reasons.   If the tail commission clause is indeed ambiguous, identification of this business and elaboration on the reasons for not pursuing tail commissions from it are relevant to the issue of how to interpret this clause through the parties' course of dealing.

**IT IS THEREFORE ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] is GRANTED with respect to Interrogatory No. 12.  Beneplace shall supplement its response to Pitney Bowes' Interrogatory No. 12 to answer the question as written.  The objections set out herein are OVERRULED.**

> **REQUEST FOR PRODUCTION NO. 13:** Produce all Master Service Agreements or other agreements that Beneplace has, or has had within the past five (5) years with other clients that contain a provision identical to Section 2.4.
>
> **SPECIFIC OBJECTIONS:**   Beneplace specifically objects to this request as harassing, overbroad, and unduly burdensome, to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.
>
> Beneplace further specifically objects to this request to the extent it seeks trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

**RESPONSE:**   Based on its general and specific objections, Beneplace does not agree to produce any documents or things responsive to this request.

Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

The same flaws outlined with respect to Interrogatory 12 are present in Beneplace's burden and trade secret objections to Request for Production 13, and these objections are OVERRULED.  Beneplace's relevance objection to Request for Production 13, however, has merit.   The Court finds the terms of 300 unrelated but "identical" Master Service Agreements are not relevant to the issues in this case, particularly in light of Court's Order that Beneplace supplement its response to Interrogatory 12.

**It is therefore ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] as to Request for Production No. 13 is DENIED.   Beneplace's objection to Pitney Bowes' Request for Production No. 13 is SUSTAINED.**

**REQUEST FOR PRODUCTION NO. 14:**   If any MSA's or agreements that were produced in response to Request for Production No. 13 have been terminated, then produce all documents evidencing your attempted enforcement of the provision that is identical to Section 2.4, receipt of commissions following the termination of such agreements, and communications with clients allegedly subject to such provision regarding Beneplace's attempted enforcement of such provisions.

**SPECIFIC OBJECTIONS:** Beneplace specifically objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, work-product doctrine, or any other statutory or common-law privilege or protection.  The scope of this request covers both privileged documents and documents prepared in anticipation of litigation.

Beneplace further specifically objects to this request as harassing, overbroad, and unduly burdensome, to the extent it seeks

8

information that is not reasonably calculated to lead to the discovery of admissible evidence.

Beneplace further specifically objects to this request to the extent it seeks trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

**RESPONSE:** Based on its general and specific objections, Beneplace does not agree to produce any documents or things responsive to this request.

Discovery is ongoing. Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections to Request for Production No. 14 regarding harassment, relevance, burden, and commercial information are OVERRULED. As noted above, counsel for Pitney Bowes was able to articulate a legitimate purpose for the information requested in Request for Production No. 14 at the hearing—to identify other tail commission clauses that were terminated, and to see whether Beneplace has been able to enforce the same rights to tail commissions it claims in this case. Beneplace has not identified any significant burden from producing communications regarding attempts to enforce the tail commission terms of terminated contracts containing identical tail provision clauses—particularly in light of statements made on the record at the hearing that such terminated contracts number only four to six contracts. Finally, Beneplace's concerns about trade secrets and confidential information are addressed by the agreed Protective Order in this case.

**IT IS THEREFORE ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] is GRANTED with respect to Request for Production No. 14. Beneplace shall supplement its response to Pitney Bowes' Request for Production No. 14 to answer the question as written. The objections set out herein are OVERRULED.**

**REQUEST FOR PRODUCTION NO. 15:**   Produce all communications with third parties concerning other master service agreements that contain a provision identical to Section 2.4 of the MSA, which have been terminated, and under which you are still receiving commissions.

**SPECIFIC OBJECTIONS:**   Beneplace specifically objects to this request as harassing, overbroad, and unduly burdensome, to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Beneplace further specifically objects to this request to the extent it seeks trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

**RESPONSE:**   Based on its general and specific objections, Beneplace does not agree to produce any documents or things responsive to this request.

Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections to Request for Production No. 15 regarding harassment, overbreadth, relevance, burden, and commercial information are OVERRULED.  As noted above, counsel for Pitney Bowes was able to articulate a legitimate purpose for the information requested in Request for Production No. 14 at the hearing—to identify other tail commission clauses that were terminated, and to see whether Beneplace has been able to enforce the same rights to tail commissions it claims in this case.  As noted above, Beneplace has not identified any significant burden from identifying communications regarding the tail commission status of 300 contracts it has clearly already identified and investigated to some degree.  Finally, Beneplace's concerns about trade secrets and confidential information are addressed by the agreed Protective Order in this case.

**IT IS THEREFORE ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] is GRANTED with respect to Request for Production No. 15.   Beneplace shall supplement its**

response to Pitney Bowes' Request for Production No. 15 to answer the question as written.

The objections set out herein are OVERRULED.

### B.  Information Relating to Damages

Pitney Bowes' discovery requests for information relating to Beneplace's alleged damages in this case are reprinted here with Beneplace's objections.

> **INTERROGATORY NO. 3:**  For each third party identified in Interrogatory No. 2 [list of vendors referenced in the MSA], identify the compensation, including, but not limited to, fees, commissions, or profit-sharing agreements, you received or are continuing to receive in connection with your MSA with Pitney Bowes.
>
> **SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this interrogatory as harassing, overbroad, and unduly burdensome, to the extent it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Merely by way of example, information regarding the compensation Beneplace receives from each vendor with whom Beneplace works in connection with the Master Services Agreement has nothing to do with the three issues in this case: (i) the legal obligations imposed by Section 2.4 of the Master Services Agreement, (ii) whether Pitney Bowes breached those legal obligations, and (iii) whether the Mercer Defendants tortiously interfered with Pitney Bowes' legal obligations.
>
> Beneplace further specifically objects to this interrogatory to the extent it seeks trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).
>
> **RESPONSE:**  Based on its general and specific objections, Beneplace does not agree to provide information responsive to this interrogatory.
>
> Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections of harassment and undue burden are overruled, as Beneplace has made no showing of any undue burden or improper purpose.  Beneplace's objection to

overbreadth/relevance, however, has some merit.  At the hearing, counsel for Beneplace clarified that not all of the services packaged under the MSA at issue would be expected to generate tail commissions.  One-time discounted purchases (the example given at the hearing was a reduced rate on a flat screen TV) and similar benefits would not, by their nature, generate any ongoing revenue stream and therefore would not be subject to the provisions of Section 2.4 of the MSA.

**IT IS THEREFORE ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] is GRANTED IN PART and DENIED IN PART with respect to Interrogatory No. 3. Beneplace shall supplement its response to Pitney Bowes' Interrogatory No. 3. to answer the question as modified:**

> INTERROGATORY NO. 3:  For each third party identified in Interrogatory No. 2 [list of vendors referenced in the MSA], identify the compensation, including, but not limited to, **ongoing post-purchase** fees, commissions, or profit-sharing agreements, you received or are continuing to receive in connection with your MSA with Pitney Bowes.

**Subject to this modification, the objections stated in Plaintiff's initial Response are OVERRULED**.  **To the extent Plaintiff wishes to invoke a privilege not to produce a responsive document, Plaintiff must produce, contemporaneously with any supplemental document production, a privilege log outlining the basic elements of each privilege claimed and the document or documents withheld based on that privilege.**

> **REQUEST FOR PRODUCTION NO. 16:** Produce all communications with third parties to the MSA that contain language that is identical to Section 2.4 of the MSA, and in which you state what [*sic*] your understanding or contention of what section 2.4 means.

> **SPECIFIC OBJECTIONS:** Beneplace specifically objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, work-product doctrine, or any other statutory or common-law privilege or protection.  The scope of this

request covers both privileged documents and documents prepared in anticipation of litigation.

**RESPONSE:**   Subject to its general and specific objections, Beneplace responds as follows:

A narrowed scope of inspection and related activities will be permitted as requested.

Discovery is ongoing.   Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Mot. Compel [Dkt. #38], Ex. C and Ex. D.

Beneplace's objections to Request for Production No. 15 regarding harassment, overbreadth, relevance, burden, and commercial information are OVERRULED.   As noted above, counsel for Pitney Bowes was able to articulate a legitimate purpose for the information requested in Request for Production No. 14 at the hearing—Beneplace's own prior statements concerning the meaning of Section 2.4 to the third parties to the MSA that is the subject of this lawsuit.   As noted above, Beneplace has not identified any significant burden from producing communications regarding its own statements to vendors concerning the meaning of Section 2.4. Finally, Beneplace's concerns about trade secrets and confidential information are addressed by the agreed Protective Order in this case.

Plaintiff argues the request is overbroad to the extent it encompasses third parties other than the vendors included in the Offering Package attached to the MSA in this case.   The Court agrees.

**IT IS THEREFORE ORDERED that Pitney Bowes' Motion to Compel [Dkt. #38] is GRANTED IN PART and DENIED IN PART with respect to Request for Production No. 16.   Beneplace shall supplement its response to Pitney Bowes' Request for Production No 16 to answer the question as modified:**

> **REQUEST FOR PRODUCTION NO. 16:** Produce all communications with **third party vendors included in the Offering Package related to** the MSA that contain language that is identical to Section 2.4 of the MSA, and in which you state what [*sic*] your understanding or contention of what section 2.4 means.

**To the extent Plaintiff wishes to invoke a privilege not to produce a responsive document, Plaintiff must produce, contemporaneously with any supplemental document production, a privilege log outlining the basic elements of each privilege claimed and the document or documents withheld based on that privilege.**

### III.   MERCER'S MOTION TO COMPEL [DKT. #42]

Mercer's requests for documents relating to Beneplace's calculation of damages are reprinted here, with Beneplace's objections. The terms "Insurance Policies" and "Insurance Carriers" are not defined in the discovery responses provided as exhibits, but at the hearing the parties defined these terms with reference to the insurance policies and insurance carriers that could be expected to produce ongoing commissions based on prior sales of insurance products by Beneplace to Pitney Bowes employees during the term of the MSA.

> **REQUEST FOR PRODUCTION 19:** Documents identifying the commissions you received relating to the Insurance Policies.
>
> **SPECIFIC OBJECTIONS:** Beneplace specifically objects to this request as overbroad and unduly burdensome, to the extent this request seeks *all* documents that would identify the commissions received relating to the Insurance Policies. Documents sufficient to identify those commissions will be produced.
>
> **RESPONSE:** Subject to its general and specific objections, Beneplace responds as follows: a narrowed scope of inspection and related activities will be permitted as requested. Discovery is ongoing. Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections to Mercer's Request for Production 19 are OVERRULED.  The request is narrowly tailored to seek documents directly relevant to the calculation of damages in this matter.  Beneplace has not articulated any undue burden from the collection of the data underlying the commission summaries it has belatedly produced.

It is therefore ORDERED that Mercer's Motion to Compel [Dkt. #42] is GRANTED with respect to Request for Production No. 19.  Plaintiff's objections are OVERRULED.  Plaintiff shall supplement the response to answer Request for Production No. 19 as written.

REQUEST FOR PRODUCTION 24:  All documents supporting your claims for damages, as alleged in ¶ 48 of the Complaint.

SPECIFIC OBJECTIONS:   Beneplace specifically objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, work-product doctrine, or any other statutory or common-law privilege or protection.  The scope of this request covers both privileged documents and documents prepared in anticipation of litigation.

Beneplace further specifically objects to this request to the extent it seeks documents or things that constitute trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

Beneplace further specifically objects to this request as vague and ambiguous, to the extent it does not reasonably identify the documents or things sought.  By way of example, it is unclear from the request which documents "support[] Beneplace's claim for damages."

RESPONSE:   Subject to its general and specific objections, Beneplace responds as follows:  a narrowed scope of inspection and related activities will be permitted as requested.  Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's trade secret objection is overruled in light of the agreed Protective Order in this case.  Beneplace's vagueness argument is easily cured:  While Beneplace cannot be required to

marshal its trial evidence before such evidence is gathered, Beneplace will be expected to support its damages claim with some sort of documentation (other than a commission "summary") at trial.  The Federal Rules require timely supplementation of discovery responses.

**Therefore, IT IS ORDERED that Defendants' Motion to Compel [Dkt. #42] is GRANTED IN PART with respect to Request for Production No. 24.  Beneplace must timely supplement its response to Request for Production 24 with any material it intends to produce at trial in support of its damages claims; failure to do so may preclude Beneplace from offering such evidence at trial.**

**To the extent Plaintiff wishes to invoke a privilege not to produce a responsive document, Plaintiff must produce, contemporaneously with any supplemental document production, a privilege log outlining the basic elements of each privilege claimed and the document or documents withheld based on that privilege.**

Mercer's requests for documents relating to Beneplace's communications with the third party Providers are reprinted here, with Beneplace's objections.

> **REQUEST FOR PRODUCTION 12:**  All documents concerning your ability to collect commissions for the Insurance Policies in which you are no longer the broker of record.
>
> **SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, work-product doctrine, or any other statutory or common-law privilege or protection.  The scope of this request covers both privileged documents and documents prepared in anticipation of litigation.
>
> Beneplace further specifically objects to this request to the extent it seeks documents or things that constitute trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(a)(1)(G).

Beneplace further specifically objects to this request as vague and ambiguous, to the extent it does not reasonably identify the documents or things sought.  By way of example, it is unclear from the request which documents "concern[] [Beneplace's] ability to collect commissions for the Insurance Policies in which [Beneplace is] no longer the broker of record."

**RESPONSE:**  Subject to its general and specific objections, Beneplace responds as follows:  a narrowed scope of inspection and related activities will be permitted as requested.  Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections to Request for Production No. 12 regarding trade secret protection and vagueness OVERRULED.  As noted above, there is a Protective Order in this case and defense counsel was able to articulate a legitimate purpose for the information requested in Request for Production No. 12 at the hearing—Beneplace's own prior statements concerning its ability to collect tail commissions.

**Therefore, IT IS ORDERED that Mercer's Motion to Compel [Dkt. #42] is GRANTED with respect to Request for Production 12.  Plaintiff shall supplement the response to Request for Production No. 12 to answer the question as written.  Plaintiff's objections are overruled.**

**To the extent Plaintiff wishes to invoke a privilege not to produce a responsive document, Plaintiff must produce, contemporaneously with any supplemental document production, a privilege log outlining the basic elements of each privilege claimed and the document or documents withheld based on that privilege.**

**REQUEST FOR PRODUCTION 17:**  Documents identifying all of the Insurance Carriers.

**SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this request as overbroad and unduly burdensome, to the extent this request seeks *all* documents that would identify the Insurance

Carriers.  Documents sufficient to identify the Insurance Carriers will be produced.

**RESPONSE:**  Subject to its general and specific objections, Beneplace responds as follows:  a narrowed scope of inspection and related activities will be permitted as requested.  Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

The parties seem to agree as to the proper scope of Request for Production 17, but it is not clear from the record and argument at the hearing whether Plaintiff has actually produced the requested documents sufficient to identify the Insurance Carriers.

**Therefore, IT IS ORDERED that Mercer's Motion to Compel [Dkt. #42] is GRANTED with respect to Request for Production 17, and Plaintiff is ORDERED to supplement this production if necessary.**

**REQUEST FOR PRODUCTION 20:** All communications between you and the Insurance Carriers relating to the Insurance Policies.

**SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this request as overbroad and unduly burdensome, to the extent it seeks documents or things not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**  Subject to its general and specific objections, Beneplace responds as follows:  a narrowed scope of inspection and related activities will be permitted as requested.  Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections as to burden and overbreadth are OVERRULED.  Beneplace has not articulated any specific burden associated with collecting and producing its own prior statements concerning its ability to collect tail commissions from the insurance carriers included

in the Offering Package attached to the Master Services Agreement in this case.  Such statements

bear directly on the meaning of the tail commission clause, if the clause is deemed ambiguous.

**Therefore, IT IS ORDERED that Mercer's Motion to Compel [Dkt. #42] is**

**GRANTED with respect to Request for Production No. 20.  Beneplace must supplement its**

**production to answer Request for Production No. 20 as written.**

> **REQUEST FOR PRODUCTION 21:**  All communications between you and any person relating to commissions you received from or for the Insurance Policies.
>
> **SPECIFIC OBJECTIONS:**  Beneplace specifically objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, work-product doctrine, or any other statutory or common-law privilege or protection.  The scope of this request covers both privileged documents and documents prepared in anticipation of litigation.
>
> Beneplace further objects to this request as overbroad and unduly burdensome, to the extent it seeks documents or things not reasonably calculated to lead to the discovery of admissible evidence.
>
> **RESPONSE:**   Subject to its general and specific objections, Beneplace responds as follows:  a narrowed scope of inspection and related activities will be permitted as requested.   Discovery is ongoing.  Beneplace reserves the right to amend or supplement this response as provided by the Federal Rules of Civil Procedure or the orders of this Court.

Beneplace's objections as to burden and overbreadth are OVERRULED.   As noted

above, Beneplace has not articulated any specific burden associated with collecting and

producing conmmunications concerning its ability to collect tail commissions from the insurance

carriers included in the Offering Package attached to the Master Services Agreement in this case.

This group of communications is directly relevant to the issues of ambiguous term construction

raised by both parties.

Therefore, IT IS ORDERED that Mercer's Motion to Compel [Dkt. #42] is GRANTED with respect to Request for Production No. 21.  Beneplace must supplement its production to answer Request for Production No. 21 as written.

To the extent Plaintiff wishes to invoke a privilege not to produce a responsive document, Plaintiff must produce, contemporaneously with any supplemental document production, a privilege log outlining the basic elements of each privilege claimed and the document or documents withheld based on that privilege.

## IV.   ATTORNEY'S FEES

While some of Defendants' discovery requires tailoring, the Court finds Defendants and Beneplace have engaged in extensive negotiation over the scope of discovery and Beneplace has failed to produce significant categories of documents—even documents it concedes are relevant to the issues in suit.  In particular, Beneplace acknowledges the existence of one or more vendors under the MSA who would be subject to the tail commission provisions but from whom tail commissions are not being pursued for business reasons.  Beneplace has not taken any steps to identify such vendors to Defendants.  Beneplace has agreed, but failed, to provide documentation of its commissions from MetLife and Liberty Mutual (other than "summary" documents with no supporting data).  Beneplace has delayed production of its agreements with MetLife and Liberty Mutual until after motions to compel were filed.  For these reasons, the Court finds reasonable attorneys' fees and costs, in an amount to be agreed by the parties or determined through submission of competent evidence and briefing, should be awarded to both defendants for the preparation and arguing of the respective Motions to Compel.

### V.   CONCLUSION

IT IS ORDERED that Defendant Pitney Bowes Inc.'s Motion to Compel Plaintiff's Production of Documents and Responses to Interrogatories [Dkt. #38], is GRANTED IN PART and DENIED IN PART as set out in detail above.

IT IS FURTHER ORDERED that Beneplace shall pay the reasonable attorneys' fees and costs incurred by Pitney Bowes in preparation of its Motion to Compel, related briefing, and hearing preparation and attendance, this amount to be agreed by the parties or determined by further briefing and evidence as necessary.

IT IS FURTHER ORDERED that Defendant Mercer Health & Benefits Administration LLC's Motion to Compel Production of Documents [Dkt. # 42] is GRANTED IN PART AND DENIED IN PART as set out in detail above.

IT IS FURTHER ORDERED that Beneplace shall pay the reasonable attorneys' fees and costs incurred by Mercer in preparation of its Motion to Compel, related briefing, and hearing preparation and attendance, this amount to be agreed by the parties or determined by further briefing and evidence as necessary.

IT IS FURTHER ORDERED that Plaintiff Beneplace, Inc., shall supplement its production in compliance with this Order on or before March 28, 2016.  To the extent Beneplace asserts any privilege as the reason for withholding otherwise relevant documents, Beneplace shall produce a privilege log on the same date as its supplemental production.

SIGNED March 7, 2016

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE